IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN R. FRANEK, | : | CIVIL NO. 3:CV-06-2212 |
| Petitioner, | : | |
| | : | (Judge Kosik) |
| v. | : | |
| | : | |
| WARDEN, SCI-RETREAT, et al., | : | |
| Respondent | : | |

**FILED
SCRANTON
OCT 27 2011**

**DEPUTY CLERK**

## MEMORANDUM

Before the Court is the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Stephen R. Franek.  Franek is confined at the State Correctional Institution at Retreat, Pennsylvania.  In the petition,  Franek challenges his 2002 conviction in the Court of Common Pleas of Centre County, Pennsylvania, for third degree murder.  He was sentenced, following a jury trial, to twenty (20) to forty (40) years in prison.  The standing petition consists of the original petition (Doc. 1), a supplement (Doc. 2) and two addendums (Docs. 6, 31) thereto.  The petition is ripe for consideration and, for the reasons that follow, will be denied.

## I.   Background & Procedural History

In considering Petitioner's direct appeal from his conviction and sentence by the Centre County Court of Common Pleas, the Pennsylvania Superior Court set forth the following factual background with respect to this case:

At the time of the shooting in February of 2002, [Franek], a 34-year-old man, was residing in a trailer with his mother and his 69-year old-stepfather.  He had come to live there after being fired after two years of employment with a trucking company. [Franek] was angry about being denied a loan he had applied for with a local bank.  He arrived home considering taking . . . action, such as throwing a rock through a window or shooting at a television, to make his parents pay attention to him and co-sign for a loan. [Franek] first approached his mother about the loan and explained that he was denied by the bank because he was unemployed and did not have family support. [Franek] testified that [his mother] did not want to hear what he was saying and told him to go talk to his stepfather. [Franek] testified to the following:

> I said since when the [expletive] do I got to talk to him about that?  I said, I said I never talked to that [expletive] monkey about anything in my whole life. Why the [expletive] do I got to talk to him now?  And I believe, I called my mom a bitch and told her to wake up and realize what the hell I'm trying to do and all that.

> And then Roy [the step-father] jumped up.  He jumped up yelling I told you before not to do that in this house.  I pulled the gun out and I took the safety off and I cocked the hammer back and I stood there.

> .   .   .

> [Roy] stopped.  I'm standing there with a gun with the hammer cocked ... .  We was [sic] standing there and he looked at mom and said the boy[']s got a gun.  I said guess what it's use [sic] for?  He said that wasn't the thing to do.  He just made a big mistake there.  I looked at him and said why don't you sit the hell down?  He said, no, not on your life not while this is going on.

> Then I was standing there.  I looked at the gun and standing there I said now let's get something straight.  I'm moving the hell away from here to get the hell away from you two. . . .

> My mom started in we don't want you to go.  We don't want you to go and she just start [sic] talking, well they were nervous.  She was nervous.

2

She was, but she talked for a couple minutes complaining why they didn't want me to leave, why they didn't want me to go and it didn't make a damn bit of sense to me. It sound [sic] like they had two different ways of saying they know what they want to do but they, I don't know.

I can't remember exactly what they said. He seemed to got [sic] tired of it and he looked at me . . . and said just like your mother says. He knows everybody in Snow Shoe and everybody in Snow Shoe knows him and they know everybody across the country where I go, wherever I'm going to go and he said you can go ahead and try but he says you're going to end up right back here.

. . . I looked at mom and I was standing like this and I couldn't believe things wouldn't go my way. I looked at mom and said, mom, you got to divorce this town [sic]. And she said that's right. I pulled the gun and shot him.

At trial [Franek] also admitted to telling others in the weeks prior to the shooting that he was ready to kill both his mother and stepfather. Approximately one week before the fatal shooting, a friend to whom [Franek] confided these threats, then telephoned the Pennsylvania State Police.

(Doc. No. 56-8, Ex. G at 1-3; Commonwealth v. Franek, 852 A.2d 1246 (Pa. Super. 2004)(citing N.T., 10/21/02, at 251-55).

On October 22, 2002, a jury found Petitioner guilty of third degree murder in the shooting death of his stepfather Roy Chambers. On November 18, 2002, he was sentenced to 20-40 years imprisonment. He filed a direct appeal from his judgment of sentence. In his Concise Statement of Matters Complained of on Appeal, he challenged the trial court's refusal to instruct the jury on two points for charge related

3

to a definition of voluntary manslaughter.  Specifically, he claimed that the facts

presented at trial warranted a charge on the unreasonable belief subsection of

voluntary manslaughter.  At trial, he sought a charge on voluntary manslaughter as

set forth in 18 Pa. C.S.A. §2503(b), and on use of force to pass a wrongful obstructor

as found in 18 Pa.C.S.A. §507(f).  (Doc. 55, Ex. B.)  He claimed that the trial court

erred in denying both these points for charge.  Id. at 3.  However, in his appellate

brief, he only presented argument with respect to the wrongful obstructor claim.  (Id.,

Ex. D.)      On April 28, 2004, the Pennsylvania Superior Court affirmed

Petitioner's judgment of sentence.  See Commonwealth v. Franek, 852 A.2d 1246

(Pa. Super. 2004).  In so doing, the court denied the imperfect self-defense claim on

the merits and denied the wrongful obstructor claim on the procedural ground that

Petitioner had failed to present any argument on it.  Further, the court stated that even

if Petitioner had presented argument in support of the wrongful obstructor claim, the

claim would have been denied as meritless.  In addressing Petitioner's appeal, the

Superior Court only applied state law.  A petition for allowance of appeal to the

Pennsylvania Supreme Court was not pursued.

On March 21, 2005, Petitioner filed a multi-part pro se petition seeking post

conviction relief ("PCRA") in the Centre County Court of Common Pleas.  The

claims raised in the petition basically alleged a vast conspiracy between the victim,

4

Petitioner's family, the community, the court system, defense counsel and the Commonwealth of Pennsylvania to destroy him and thwart his happiness ("the PCRA conspiracy claims").[1]  These claims were different than those raised on direct appeal. The PCRA court appointed counsel who filed an amended PCRA petition on August 31, 2005.  The amended petition incorporated the claims set forth in the original PCRA petition, as well as raised a new claim of counsel ineffectiveness ("the PCRA ineffectiveness claim").  Specifically, the new claim was appellate counsel's ineffectiveness in failing to argue in the brief to the Superior Court that the trial court erred in refusing to charge the jury on 18 Pa.C.S.A. § 507(f) - Use of Force to Pass Wrongful Obstructor.

On January 13, 2006, the petition was denied without a hearing.  (Doc. 56-16, Commonwealth of Pennsylvania v. Franek, CP-14-CR-247-2002 (Centre County CCP ).  The trial court rejected the ineffective assistance of appellate counsel claim finding that 18 Pa.C.S.A. § 507(f) was "wholly inapplicable to the murder at issue." As such, Petitioner's argument that appellate counsel was ineffective in failing to

---

[1]  These conspiracy claims included trial counsel's ineffectiveness in: (1) failing to investigate the case; (2) declaring that Petitioner was a murderer while refusing to hear his side of the story; (3) failing to enter pleas of self-defense, defense of property and duress; (4) failing to subpoena, call and adequately question witnesses; (5) failing to raise issues "relating to circumstances [Petitioner] myself was in"; (6) allowing the court to omit valuable testimony; (7) failing to inform Petitioner of a "serious provocation theory" under 18 Pa.C.S.A. 2503(b); (8) spending three hours with Petitioner; and (9) failing to file a motion to change venue.

argue the wrongful objector claim on appeal was unable to survive.  The trial court

also denied the remaining PCRA claims as waived and not entitled to merits review

due to their vagueness and the lack of support by Petitioner through specific factual

averments.

A Notice of Appeal from the trial court's denial of PCRA relief was filed on

February 10, 2006 in the Pennsylvania Superior Court.  (Doc. 55, Ex. A.)  In his

Concise Statement of Matters Complained of on Appeal, Petitioner indicated he was

appealing every aspect of the trial court's denial of PCRA relief.  However, the only

argument actually presented by Petitioner to the Superior Court was with respect to

the trial court's denial of the ineffectiveness claim relating to the wrongful obstructor

defense.  No argument was presented with respect to the remaining PCRA claims

comprising the "conspiracy theory," or any other assertion of counsel ineffectiveness.

(Id., Ex. O.)  The Pennsylvania Superior Court affirmed the denial of the PCRA

petition on February 28, 2007. (Doc. 56-21, Ex. R, Commonwealth of Pennsylvania

v. Franek, No. 301 MDA 2006.)  In so doing, the court applied state law and agreed

with the trial court's reasoning, finding the court's decision with respect to the

ineffectiveness claim as to the wrongful obstructor defense to be supported by the

record and free from legal error.  A petition for allowance of appeal was filed in the

Supreme Court of Pennsylvania and subsequently denied on September 5, 2007.

6

(Doc. 56-22, Ex. S.)  A petition for certiorari was not filed with the United States Supreme Court.

The instant petition for writ of habeas corpus was filed in this court on November 14, 2006 (Doc. 1), prior to the conclusion of state court proceedings.  An addendum was submitted on November 21, 2006 (Doc. 6).[2]  Following briefing with respect to the issue of the timeliness of the petition, the court issued an order staying this case while Petitioner's petition for allowance of appeal from the decision of the Pennsylvania Superior Court affirming the denial of his amended PCRA petition was pending before the Pennsylvania Supreme Court. (Doc. 29.)  On January 26, 2009, the stay was lifted following notification from Petitioner that the Supreme Court had, in fact, ruled upon his petition and denied the same.  (Doc. 45.)

The following grounds are set forth by Petitioner in his habeas corpus petition:

(1)   The trial court was corrupt and violated Petitioner's right to equal protection.

(2)   The corrupt trial court violated Petitioner's right to a fair and public trial.

(3)   The right to a fair trial was obstructed by the malicious and deceitful prosecution tactics of District Attorney Ray Gricar and the court.

(4)   Ineffective assistance of counsel - total non-performance by the public defender's office and subsequent counsel.

(Doc. 1, Pet. at 6-10.)  A response to the petition and supporting exhibits have been

---

[2] This addendum is a duplicate of Document 2.

7

submitted. (Docs. 55-57.) No traverse has been filed by Petitioner. The court will now address the claims raised in the petition.

## II.    Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A.    Exhaustion

Before a federal court can review the merits of a state prisoner's habeas petition, it must determine whether the petition has met the requirements of exhaustion. Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on

principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

To satisfy the exhaustion requirement, a federal habeas petitioner must have presented the facts and legal theory associated with each claim through "one complete round of the State's established appellate review process."[3] O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); see also Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004). The exhaustion requirement is satisfied if a petitioner's claims are either presented to the state courts directly on appeal from the judgment of sentence, or through a collateral proceeding, such as a PCRA petition. Swanger v. Zimmerman, 750 F.2d 291, 195 (3d Cir. 1984). It is not necessary for a petitioner seeking federal habeas relief to present his federal claims to state courts both on direct appeal and in a PCRA proceeding. Id. However, a petitioner is not deemed to have exhausted the remedies available to him if he has a right under the state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c);

---

[3] Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Pennsylvania Superior Court are considered exhausted for the purpose of federal habeas corpus relief under Section 2254. See In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218, Judicial Administration Docket No. 1 (May 5, 2000)(per curiam). As such, petitioners are not required to seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a "full opportunity to resolve any constitutional claims." Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

Castille v. Peoples, 489 U.S. 346, 350 (1989). The petitioner bears the burden of demonstrating that he has satisfied the exhaustion requirement. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000)(citing Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997)).

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996). The purpose of the procedural default rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. Coleman, 501 U.S. at 732.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. Id. at 750. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 516 U.S. 1151 (1996). However, the procedural default doctrine only applies when a state procedural rule is consistently

10

or regularly applied. <u>Banks v. Horn</u>, 126 F.3d 206, 211 (3d Cir. 1997)(quoting

<u>Johnson v. Mississippi</u>, 486 U.S. 578, 588-89 (1988))[4].   A petitioner whose

constitutional claims have not been addressed on the merits due to procedural default

can overcome the default, thereby allowing federal court review, if he or she can

demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the

alleged violation of federal law; or (2) failure to consider the claims will result in a

"fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Edwards v.</u>

<u>Carpenter</u>, 529 U.S. 446, 451 (2000); <u>Wenger v. Frank</u>, 266 F.3d 218, 223 (3d Cir.

2001); <u>Lines</u>, 208 F.3d at 166.

The United States Court of Appeals for the Third Circuit has instructed that a

petition containing exhausted and unexhausted, but procedurally barred claims, is not

a mixed petition requiring dismissal under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). <u>See</u>

<u>Wenger</u>, 266 F.3d at 227.  Instead, the Court of Appeals held that the district court

should review the merits of the exhausted claims, but must not decide the merits of

the claims that are barred under the procedural default doctrine. <u>Id</u>.

**B.     Merits**

Once a court has determined that the exhaustion requirement is met, and

---

[4] <u>See</u> <u>also</u> <u>Doctor</u>, 96 F.3d at 675 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

therefore review of the issues presented in a habeas petition on the merits is

warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  That section

states, in relevant part, that exhausted claims that have been adjudicated on the merits

by the state courts are subject to review under the standard of whether they are

"contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States," 28 U.S.C.

§ 2254(d)(1), or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding." § 2254(d)(2).  The Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA") places the burden on a petitioner to make this showing.  <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362 (2000).

In a recently issued opinion, the United States Court of Appeals for the Third

Circuit set forth the following description of the framework for analysis required

under § 2254(d):

> Consistent with Supreme Court precedent, we read § 2254(d) to require
> three distinct legal inquiries.  <u>See</u>, <u>e.g.</u>, <u>Harrington v. Richter</u>, ___ U.S.
> ___, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011).  The first is whether
> the state court decision was "contrary to ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> § 2254(d)(1).  The second is whether the state court decision "involved
> an unreasonable application of" such law.  § 2254(d)(1).  And the third is
> whether the state court decision "was based on an unreasonable
> determination of the facts in light of the evidence presented" to the state
> court.  § 2254(d)(2).

12

The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380, 125 S.Ct. 2456,162 L.Ed.2d 360 (2005)(quoting Wiggins v. Smith, 539 U.S. 510, 519, 520, 123 S.Ct. 2527, 156 L.2d.2d 471 (2003)). For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)(internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76, 123 S.Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75, 123 S.Ct. 1166.

The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005)(citing Williams, 529 U.S. at 405, 120 S.Ct. 1495, and Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. See Kane v. Garcia Espitia, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005).

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petition has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)("State-court

factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'")(quoting § 2254(e)(1))(citing <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)); <u>see also</u> <u>Simmons v. Beard</u>, 590 F.3d 223, 231 (3d Cir. 2009)("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. <u>Cullen v. Pinholster</u>, ___ U.S. ___, ___, 131 S.Ct. 1388, 1401-03, ___L.Ed.2d___ (2011).

<u>Rountree v. Balicki</u>, 640 F.3d 530, 537-38 (3d Cir. 2011).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if a court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); <u>Porter v. Horn</u>, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); <u>see also</u> <u>Torres v. Prunty</u>, 223 F.3d 1103, 1107-08 (9th Cir. 2000); <u>cf.</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 (1979). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. <u>Porter</u>, 276 F. Supp. 2d at 296; <u>see also</u> <u>Williams</u>, 529 U.S. 362 at 408-09.

Relief can only be granted if the petitioner shows that the state court's decision satisfies one of the three tests as set forth above in <u>Rountree</u>. With the above legal

14

framework in mind, the court will now address the claims in the instant habeas petition.

## III.   Analysis

### A.   Procedurally defaulted grounds

In the instant case, Petitioner has procedurally defaulted grounds 1, 2, 3 and the majority of ground 4.  First, grounds 2 and 3 were never presented in the state courts. Second, with respect to ground 1, Petitioner basically alleges an elaborate conspiracy among family members, the District Attorney, the courts and members of the Snow Shoe community.  This ground, while presented by Petitioner in his PCRA petition, was not raised on appeal to the Pennsylvania Superior Court, and was therefore waived.  The same is true with respect to the majority of Petitioner's claims in ground 4 as to the ineffectiveness of trial counsel, PCRA counsel and appellate counsel. Although Petitioner raised ineffectiveness grounds in his PCRA petition, and  his concise Statement of Matters Complained of on Appeal indicated he was appealing every aspect of  the trial court's denial of PCRA relief, the only argument presented by Petitioner to the Superior Court on appeal was with respect to the trial court's denial of the ineffectiveness claim relating to the wrongful obstructor defense.  As such, the only ineffectiveness claim that is exhausted is that of appellate counsel's ineffectiveness in failing to argue the wrongful obstructor defense in the direct appeal

15

brief.[5]

To comply with the exhaustion requirement of 28 U.S.C. § 2254, Petitioner was required to present all of his federal habeas claims to the Pennsylvania courts in his direct appeal or in his PCRA proceeding. Because he failed to do so with respect to grounds 1-3 and most of ground 4, this court must determine whether he has any other available state court remedy through which he can present his unexhausted claims to the Pennsylvania courts. Under Pennsylvania law, the exclusive remedy to challenge a conviction following direct appeal is through a PCRA proceeding brought in accordance with the Post Conviction Relief Act. See 42 Pa. Cons. Stat. § 9542. Under the PCRA, a petitioner may bring a second PCRA petition only as provided for in the PCRA, as follows:

> (b)  Time for filing petition. -
>
> (1)  Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> > (i)  the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

---

[5] However, despite the fact that this ineffective assistance of appellate counsel claim appears exhausted, Petitioner fails to raise this issue as a ground in his pending federal habeas corpus petition. This issue will be addressed in the next section of analysis.

(ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)    the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2)    Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

(3)    For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

(4)    For purposes of this subchapter, "government officials" shall not include defense counsel, whether appointed or retained.

42 Pa. Cons. Stat. § 9545(b). The Supreme Court of Pennsylvania has held that the PCRA's timeliness requirements are mandatory and jurisdictional in nature; thus, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner. See, e.g., Commonwealth v. Murray, 562 Pa. 1, 5, 753 A.2d 201, 202-03 (2000); Commonwealth v. Fahy, 558 Pa. 3113, 328-29, 737 A.2d 214, 222 (1999).

Under Pennsylvania law, the only potential state remedy that Petitioner may pursue to raise his unexhausted claims is a second PCRA petition. In order for him to be able to file a second PCRA now, he must allege facts that meet one of the

17

requirements set forth in § 9545(b)(1). Petitioner's habeas petition does not allege any of the three exceptions listed in said section. Consequently, he is precluded from presenting his unexhausted claims in a second PCRA petition based on the time limitations set forth in the PCRA. These time limitations are an independent and adequate state law ground sufficient to invoke the procedural default doctrine for purposes of federal court review. See Lines v. Larkin, 208 F.3d 153, 165 (3d Cir. 2000).

As stated previously, a federal court may not review Petitioner's defaulted claims unless he demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. at 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494.

Petitioner neither argues cause and prejudice, nor the existence of a fundamental miscarriage of justice, in his petition. Consequently, Petitioner is not

18

entitled to habeas corpus relief with respect to grounds 1-3 and the majority of ground 4 as detailed above.

**B.    Ineffective Assistance of Appellate Counsel in failing to argue the wrongful obstructor defense**

As previously set forth, all of Petitioner's ineffective assistance of counsel claims are unexhausted and procedurally defaulted.  The only ineffective assistance of counsel claim for which Petitioner did invoke one complete round of the state's established appellate review process is with respect to appellate counsel's alleged failure to argue the wrongful obstructor claim (trial court's error in not charging the jury on 18 Pa. C.S.A. § 507(f)- Use of Force to Pass Wrongful Obstructor) to the Pennsylvania Superior Court.  However, while this claim is exhausted, Petitioner fails to raise this claim as a ground in the pending habeas corpus petition.  After a careful review of the instant petition and the ineffective assistance of counsel claims set forth in ground 4, Petitioner fails to advance the only exhausted ineffective assistance of counsel claim.  As such, it is not subject to review in this action.

The court notes, however, that even if we were to find that the instant petition raised the claim of the ineffectiveness of appellate counsel in failing to argue the wrongful obstructor claim, it would be found to be without merit.  An ineffective assistance of counsel claim is governed by the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which constitutes "clearly established Federal

19

law" for AEDPA purposes. <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000); <u>Rainey v. Varner</u>, 603 F.3d 189, 197 (3d Cir. 2010).  A habeas petitioner asserting a claim under <u>Strickland</u> must establish two elements.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687.  In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" <u>Id</u>. at 689.  Thus, counsel's performance will be deemed deficient only if it "fell below an objective standard of reasonableness." <u>Id</u>. at 688.  The question ultimately is "whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance." <u>Id</u>. at 690.

"Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." <u>Id</u>. at 687.  To establish prejudice, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694.

This court must determine whether the Pennsylvania state court applied a rule that contradicts the United States Supreme Court's standard set forth in <u>Strickland</u> for evaluating an ineffective assistance of counsel claim or was confronted with a set of facts materially indistinguishable from a decision of the United States Supreme Court but reached a different result.

In the instant matter, the Pennsylvania Superior Court used the following Pennsylvania standard in analyzing Petitioner's ineffective assistance of counsel claims on appeal from the denial of his PCRA petition:

> In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. <u>Commonwealth v. Kimball</u>, 555 Pa. 299, 724 A.2d 326, 333 (1999). Appellant must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. <u>Id</u>. The petitioner bears the burden of proving all three prongs of the test. <u>Commonwealth v. Meadows</u>, 567 Pa. 344, 787 A.2d 312, 319-20 (2001).

> <u>Commonwealth v. Johnson</u>, 868 A.2d 1278, 1281 (Pa. Super. 2005).

(Doc. 56-21, Ex. R, Pa. Super. Op. at 6-7.)

The above standard is basically identical to the <u>Strickland</u> test.  Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective

assistance of counsel claims, but, in substance, it is identical to the Strickland test.

Johnson, 771 A.2d at 757.  While the issue of merit of an underlying claim is not a

specific factor under Strickland, the United States Court of Appeals for the Third

Circuit has held that requiring a showing that the underlying claim has merit is not in

conflict with Strickland.  Rompilla v. Horn, 355 F.3d 233, 248 n. 9 (3d Cir. 2004),

reversed on other grounds, Rompilla v. Beard, 545 U.S. 374 (2005).  Rather, it is

considered to be a determinative factor in the "deficient performance" prong of the

Strickland analysis.  See Werts, 228 F.3d at 203-04.  The Third Circuit Court of

Appeals has held that Pennsylvania's test for assessing ineffective assistance of

counsel claims is not contrary to Strickland.  Jacobs v. Horn, 395 F.3d 92, 107 n. 9

(3d Cir. 2005); Werts, 228 F.3d at 204.  In the instant case, the court finds that the

Pennsylvania court neither applied a rule of law that contradicts Strickland, nor

reached a contrary result after being confronted with facts materially

indistinguishable from Strickland.

    This court has determined that the Pennsylvania state court identified the

correct governing legal principle with respect to Petitioner's ineffective assistance of

counsel claims.  As such, the relevant inquiry becomes whether the state court's

decision involved an unreasonable application of Strickland or an unreasonable

determination of facts in light of the record evidence at the time of the state court's

adjudication. The PCRA court found §507(f)[6] to be wholly inapplicable to the murder at issue in the instant case, and also that the powers provided to a non-obstructor in §507(f) were disproportionate to the force used by Petitioner during the murder in question. It cannot be said that the state court's determinations involved an unreasonable application of the law or were based on an unreasonable determination of the facts in light of the record evidence. The evidence did not support a finding that the victim obstructed Petitioner's movements in any way. Further, while there was testimony that the victim told Petitioner not to swear in the house, there was no evidence that the victim obstructed Petitioner's movements with deadly force. In addition, based upon the evidence presented, the state court did not believe that the omission of the jury instruction had any adverse effect on the outcome of the case. The evidence revealed that Petitioner shot the victim during a verbal altercation in the victim's home. There was no evidence that the victim had a firearm or a knife in

---

[6] The relevant portion of §507(f) states as follows:

The use of force to pass a person whom the actor believes to be intentionally or knowingly and unjustifiably obstructing the actor from going to a place to which he may lawfully go is justifiable, if:

(1)  the actor believes that the person against whom he uses force has no claim of right to obstruct the actor; ... and,

(3)  the force used is not greater than it would be justifiable if the person obstructing the actor were using force against him to prevent his passage.

23

attempt to force Petitioner to remain in Centre County. Based on such evidence, it is reasonable to believe that the jury would have arrived at the same finding of third degree murder even if such an instruction had been given. As such, appellate counsel cannot be found to be ineffective for failing to raise the issue of trial court error in failing to instruct the jury on §507(f) on appeal, when the evidence did not support the requested charge. For these reasons, even if Petitioner included this exhausted ineffective assistance of appellate counsel in his pending habeas corpus petition, we find it to be without merit.

For all of the foregoing reasons, the Court will issue an appropriate order denying the pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## IV.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). In

24

the instant matter, jurists of reason would not find the disposition of Petitioner's case debatable.  As such, no COA will issue.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


STEPHEN R. FRANEK,                  :        CIVIL NO. 3:CV-06-2212
          Petitioner,               :
                                    :        (Judge Kosik)
          v.                        :
                                    :
WARDEN, SCI-RETREAT, et al.,        :
          Respondents               :


## O R D E R

**AND NOW,** this 27ᵗʰ day of October, 2011, upon consideration of the

petition for writ of habeas corpus, for the reasons set forth in the accompanying

Memorandum, **IT IS HEREBY ORDERED THAT:**

1.     The petition for a writ of habeas corpus is **denied**.

2.     The Clerk of Court is directed to **close this case**.

3.     There is no basis for the issuance of a certificate of appealability.


EDWIN M. KOSIK
United States District Judge